IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CYNTHIA I. KIDD, )
)
        Plaintiff, )
)
vs. )   Civil Action No.  2:16-1843
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
        Defendant. )
)
)

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 12 and 14]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 13] is granted, and Plaintiff's Motion [ECF No. 11] is denied.

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On or about February 18, 2014, Plaintiff applied for DIB. [ECF No. 7-4, at 60]. In her application, she alleged that since January 3, 2013, she had been disabled due to depression, anxiety, OCD, headaches, and hives. Id. [ECF No. 7-4 at

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

60-61; No. 7-7 at 115, 119.] Her date last insured is March 31, 2018. [ECF No 7-2, at 10]. The state agency denied her claims initially, and she requested an administrative hearing. [ECF No. 7-5, Exs. 4B, 5B]. Administrative Law Judge ("ALJ") Daniel F. Cusick held a hearing on May 8, 2015, at which Plaintiff was represented by counsel. [ECF No. 7-3]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 53-59. In a decision dated June 3, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 7-2, at 8-19]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on October 21, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-4. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court

would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210,

221 (3d Cir. 1984).

B.  **WHETHER THE ALJ ERRED IN CONCLUDING THAT PLAINTIFF'S HEADACHES WERE NON-SEVERE**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in determining that her headaches were a non-severe impairment. [ECF No. 12, at 9-14]. This argument is without merit. The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[2]

In this case, I agree with Defendant that substantial record evidence supports the ALJ's finding that Plaintiff's migraines are not severe. In his step two analysis, the ALJ noted that although Plaintiff testified to experiencing frequent headaches, the evidence showed that those

---

[2] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

headaches do not have more than a *de minimis* effect on her ability to perform basic work activities. [ECF No. 7-2, at 11]. In particular, the ALJ noted that, although Plaintiff complained to her therapist of headaches in December 2013, the medical record does not contain subsequent references to frequent headaches. Id. (citing Ex. 2F).[3] The ALJ also remarked that Plaintiff had not treated with a physician for headaches or any other physical impairment since her alleged onset date and had not been prescribed any medication for headaches. Id. Further, Plaintiff's then-attorney did not argue limitations from headaches in a May 2015 brief and stated at the hearing that he did not think Plaintiff had any physical problems that were disabling. Id. (citing Ex. 9E); see also ECF No. 7-3 at 29.[4]

Plaintiff's suggestion that the ALJ should have ordered a consultative examination to evaluate Plaintiff's alleged headaches is without merit. The decision to order a consultative examination is within the sound discretion of the ALJ. See Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002); 20 C.F.R. § 404.1517. An "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Thompson, 45 F. App'x at 149. Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a

---

[3] Plaintiff disagrees that the record is devoid of subsequent references to frequent headaches, arguing that her treating psychiatrist, Dr. Humphreys, noted in her January 23, 2014 Psychiatric Evaluation and in a number of subsequent medication evaluations that Plaintiff has a history of headaches. [ECF No. 12 at 11-12]. This argument does not change my analysis. The January 2014 evaluation to which Plaintiff points states, in the "past medical history" section, only that Plaintiff reported having "a history of low blood pressure and headaches." [ECF No. 7-9 (Ex. 2F) at 234]. The subsequent "references" merely repeat this information (i.e., "history of headaches") on the Axis III line of the DSM IV diagnosis. [ECF Nos. 7-9, Ex. 2F; 7-10 (Ex. 4F)]. None of these conclusory notations, or the medical records that contain them, mention the frequency or severity of Plaintiff's alleged headaches or reflect any history of treatment for, or limitations caused by, headaches.

[4] Specifically, Plaintiff's then-attorney, John Morgan, by way of opening, stated that "I don't think she has any physical problems that are disabling. It's her mental problems that she has." [ECF No. 7-3, at 28].

5

conflict, inconsistency, or ambiguity in the record. See 20 C.F.R. § 404.1519a. Based on the existing record evidence in this case, I find that the ALJ was not required to order a consultative examination. Other than Plaintiff's subjective testimony, which the ALJ properly discounted, nothing in the record evidence raises the suspicion of a severe impairment sufficient to require a consultative examination. As the ALJ accurately notes, Plaintiff did not seek treatment with a physician for her headaches and was not prescribed medication for headaches. Moreover, Plaintiff's attorney did not mention limitations from headaches in a May 2015 brief and affirmatively represented to the ALJ that Plaintiff did not have any physical limitations that were disabling, only mental impairments. Accordingly, the ALJ did not abuse his discretion in failing to order a consultative examination here. See Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987).

Plaintiff's argument that the ALJ failed to consider her lack of health insurance as a reason for the dearth of medical evidence regarding headaches also is unpersuasive. Viewing the opinion as a whole, it is clear that the ALJ acknowledged Plaintiff's lack of insurance and considered it in his decision. See, e.g., ECF No. 7-2 at 14-16. Moreover, Plaintiff's course of treatment was not the only evidence the ALJ considered. The ALJ also looked at Plaintiff's activities of daily living, lack of other record evidence of headaches, her attorney's representations, and other factors in assessing Plaintiff's headaches and the credibility of her testimony regarding the same. Accordingly, I find no error in the ALJ's approach.

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's major depressive disorder, obsessive-compulsive disorder, and panic disorder without agoraphobia were severe impairments. [ECF No. 7-2 at 10-11]. The ALJ ruled against Plaintiff at steps four and/or five of the sequential evaluation process, after concluding that her residual functional capacity was sufficient to enable her to perform certain work existing in the economy.

6

Id. at 13-19. Moreover, the ALJ considered all of Plaintiff's impairments, including her alleged headaches, in making his residual functional capacity determination. Id. at 14. Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if he had erroneously concluded that her headaches were not severe, any such error was harmless. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

In short, the ALJ's finding that Plaintiff's headaches were not severe is supported by substantial evidence and/or any error in this regard was harmless. Accordingly, Plaintiff's Motion for Summary Judgment on this issue is denied.

## C.    WHETHER THE ALJ IMPROPERLY DISREGARDED THE MEDICAL OPINION OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff argues that the ALJ erroneously disregarded the opinion of her treating psychiatrist, Linda Humphreys, MD, regarding Plaintiff's mental impairments. [ECF No. 12 at 14-18]. In particular, Plaintiff faults the ALJ for rejecting Dr. Humphreys' opinion in a Medical Source Statement she completed on April 2, 2015, that Plaintiff had "marked" impairments in her ability to respond appropriately to work pressures and in her ability to respond appropriately to changes in a routine work setting due to panic attacks and OCD. See id. (citing Ex. 5F). Plaintiff also contends that the ALJ improperly rejected the GAF scores of 40 that Dr. Humphreys assigned Plaintiff during Plaintiff's course of treatment with her. Id. This argument is without merit.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1).[5] In addition, the ALJ generally will give

---

[5] Although the regulations governing the evaluation of medical evidence were recently amended, the

7

more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

---

version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 404.1520c (2017).

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. 20 C.F.R. § 404.1527(d)(1), (3). Likewise, the final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. Id. § 404.1527(d)(2), (d)(3).

In this case, the ALJ did not reject Dr. Humphreys' April 2015 opinion completely, but, rather, gave it "some weight." [ECF No. 7-2 at 16-17]. Specifically, he credited Dr. Humphreys' indication that Plaintiff had only slight difficulty understanding, remembering, and carrying out short, simple instructions; slight problems interacting appropriately with coworkers; and no more than moderate difficulty interacting appropriately with the public. Id. (citing Ex. 5F). The ALJ concluded that these statements were consistent with Dr. Humphreys' own treatment notes as well as therapy notes and Plaintiff's treatment history. Id. The ALJ, however, assigned little weight to Dr. Humphreys' findings of marked limitations in responding appropriately to pressure in the work setting and to changes in a routine work setting because those assessments were inconsistent with Dr. Humphreys' earlier assertions that Plaintiff could work; with Plaintiff's treatment history since her alleged onset date; and with the treatment notes showing that Plaintiff's symptoms generally were well-controlled with medication. Id. (citing Exs. 2F, 4F, 5F). Dr. Humphreys' opinion also was inconsistent with the March 21, 2014 opinion of state agency reviewing psychologist, Timothy Ostrich, D. Psy., who concluded that Plaintiff had no more than moderate limitations in any work related function. Id. at 16 (citing Ex. 1A). The ALJ gave Dr. Ostrich's opinion great weight because it was consistent with Plaintiff's treatment history during the period at issue, which included no emergency room visits or inpatient care; with Dr. Humphreys' psychiatric progress notes, which showed improvement with medication; and with

Dr. Humphreys' and Plaintiff's statements in 2014 that Plaintiff was ready and able to go back to work. Id. (citing Exs. 1A, 2F, 4F). The ALJ did not discount Plaintiff's mental health symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established mental health impairments, including a limitation to work with a specific vocational preparation (SVP) of 1 or 2; to simple, routine, and repetitive tasks, involving only simple work-related decisions with few, if any, work place changes; and to occasional interaction with the public and coworkers, with no tandem tasks, and occasional supervision. Id. at 13-17.

The ALJ's reasons regarding the weight assigned to Dr. Humphreys' April 2015 opinion are acceptable reasons for discounting opinion evidence. See 20 C.F.R. § 404.1527. Based on the same, I am able to conduct a proper and meaningful review. I find the reasons the ALJ provided in weighing Dr. Humphreys' opinion and Dr. Ostrich's opinion were explained sufficiently and well-supported by substantial evidence of record. [ECF No. 7-2 at 16-17]. Therefore, I conclude that the ALJ did not err in this regard, and remand is not warranted on this basis.[6]

To the extent Plaintiff argues that the ALJ improperly evaluated her Global Assessment of Functioning ("GAF") scores in evaluating the medical opinion evidence, that argument is without merit. Plaintiff highlights that Dr. Humphreys consistently assigned her a GAF score of around 40 during the course of her treatment, indicating some impairment in reality testing or a major impairment in several areas. [ECF No. 12 at 16]. These GAF scores, however, are not dispositive. The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).[7] As courts have

---

[6] To the extent Plaintiff supports her argument by suggesting that Dr. Humphreys' opinion is consistent with other medical evidence, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, such support is misplaced.

[7] A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays

explained, however, a particular GAF score does not necessarily correlate to one's ability to work. See, e.g., id. at 75. Moreover, the ALJ did not ignore these GAF scores in his analysis. Rather, he acknowledged the scores and explained his decision to assign them little weight. [ECF No. 7-2, at 17]. Among other things, the ALJ noted that the low GAF scores were inconsistent with the treatment notes and Plaintiff's own statements regarding her readiness to work. The ALJ also highlighted that the GAF scores remained constant even when corresponding records showed improvement with medication, further indicating that the scores were not accurate measurements of Plaintiff's overall functioning. Id. (citing Exs. 2F, 4F). For these reasons, the ALJ properly refused to give significant weight to the GAF scores at issue.

In short, I find the ALJ appropriately weighed Dr. Humphreys' opinion and the other medical evidence of record in evaluating Plaintiff's mental health impairments and that he supported his findings with substantial evidence. Accordingly, I find no error in this regard requiring remand on this issue.

### D.     WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to work with a specific vocational preparation (SVP) of 1 or 2; was limited to simple, routine, and repetitive tasks, involving only simple work-related decisions with few, if any, work place changes; and was limited to occasional interaction with the public and coworkers, with no

---

in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

tandem tasks, and occasional supervision. [ECF No. 7-2 at 13-17]. The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. Id. at 18-19. The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. §§ 404.1545, 404.1546.

In primary part, Plaintiff bases her argument that the ALJ's RFC finding is deficient on her contentions that the ALJ failed to adequately address her headaches and/or gave insufficient weight to the opinions of her treating psychiatrist, Dr. Humphreys. [ECF No. 12 at 18-20]. For the reasons set forth above, Plaintiff's arguments in this regard are without merit, and I need not re-address them here. Plaintiff's remaining argument is that her height (5ft. 4in.) and her weight (96 lbs.) would preclude her from meeting the lifting requirements of medium or greater work. Id. at 19-20. This argument is directly contrary to agency policy. As explained in Social Security Ruling 96-8p:

> [I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments. **It is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights).** Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

S.S.R. 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996) (emphasis in original).

Because the RFC adequately accounts for Plaintiff's limitations related to her medically determinable impairments and supported by the record, I find no error on this issue.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CYNTHIA I. KIDD,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 2:16-1843

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 30th day of November, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 11] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).